IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LIONA NELSON KAPOI, | Civil No. 25-00363 MWJS-RT |
| Plaintiff, | ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| vs. | |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | |
| Defendant. | |

### INTRODUCTION

Liona Nelson Kapoi applied for Social Security disability and disability insurance benefits. At his hearing before an Administrative Law Judge (ALJ), he testified about his significant mental health challenges and how they have limited him from work. After the hearing, the ALJ—acting on behalf of the Commissioner—issued a written decision rejecting Kapoi's testimony about the severity of his mental health conditions.

In this appeal, Kapoi argues that the ALJ's written opinion did not offer the "specific, clear and convincing reasons" needed to properly reject a claimant's symptom testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up). Agreeing with Kapoi's argument, the court REVERSES the decision of the Commissioner and REMANDS for further administrative proceedings.

## BACKGROUND

Kapoi filed his applications for Social Security disability and disability insurance benefits on July 27, 2022, contending that he has been disabled since July 28, 2019.  Dkt. No. 10-1, at PageID.38 (Administrative Record (AR) at 17).  After his applications were denied on the papers, he sought a hearing before an ALJ, which was held on April 4, 2024.  *Id.*; *see also id.* at PageID.91-130 (AR at 70-109).[1]

At the hearing, Kapoi testified at length about the serious symptoms of his mental health impairments—including his bipolar disorder.  When asked why he had not driven a vehicle in the last four or five years, he answered that "there are times where I do disassociate," and so using public transportation is "the safest way."  *Id.* at PageID.104 (AR at 83).  He later emphasized that he "can and still do[es] disassociate" even when he is "on [his] meds."  *Id.* at PageID.116 (AR at 95).

In response to Kapoi's attorney asking him to explain in more detail how his bipolar disorder affects him, Kapoi answered that "[i]t's like riding a wave that is out of control.  You're always up, down and around."  *Id.* at PageID.117 (AR at 96).  He

---

[1]   Kapoi has had applications for Social Security benefits denied in prior occasions, but the ALJ's written decision did not rely on those prior decisions to support the current one.  *See* Dkt. No. 10-1, at PageID.38-39 (AR at 17-18).  The Commissioner likewise does not argue that the prior denials should have any bearing on this appeal.  Dkt. No. 14.  If there is a reason why the prior denials affect whether it is appropriate to grant benefits now, the ALJ remains free on remand to explain why that might be.

explained that he still feels this way even when taking his medications: "With the medications, at least you have a surf board on this wave," but "you're still doing it." *Id.*

When asked about his ability to concentrate on tasks, Kapoi responded, "I try really hard but I don't because I know I'm just—it's just not gonna matter." *Id.* at PageID.119-20 (AR at 98-99). In response to the question of whether he could hold his concentration for eight hours a day, five days a week, he answered, "I'd be surprised if I could hold it for eight minutes." *Id.* at PageID.120 (AR at 99).

Kapoi also explained that he has trouble being around others. As he explained, "I feel like I'm not safe. And it's not me from them. It's them from me. So I tend to just stay away. I don't even interact with my family." *Id.* As Kapoi summed it up, "I mean I been fighting to be just a little bit okay for more than half of my life." *Id.*

Two and a half months later, the ALJ issued a written decision denying Kapoi's applications. *Id.* at PageID.35-56 (AR at 14-35). The ALJ found that Kapoi did, indeed, suffer from multiple severe physical and mental impairments—the latter including not only alcohol use disorder and depressive disorder, but also bipolar disorder. *Id.* at PageID.41-43 (AR at 20-22). The ALJ also acknowledged that Kapoi had testified about "worsening symptoms, such as occasional verbal outbursts, disassociation, poor concentration, and problems being around others"; that he "testified to being surprised if he could keep concentration for even 8 minutes"; that he "also has a history of a suicide attempt"; and that there was medical support for the conclusion that Kapoi was

3

"'volatile and labile.'" *Id.* at PageID.47-48 (AR at 26-27) (quoting B5F/8). And the ALJ did not suggest that Kapoi was malingering—that is, feigning his conditions. *Id.* at PageID.46 (AR.25). But the ALJ nonetheless concluded Kapoi could still perform full-time sedentary work with certain limitations. *Id.* at PageID.45 (AR at 24). In reaching that conclusion, the ALJ rejected Kapoi's testimony about the severity of his mental health symptoms. Here is the entirety of the ALJ's reasoning for doing so:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> . . . .
>
> [T]urning to clinical signs and findings pertaining to mental health, mental status exams during the considered period—prior to the September 30, 2019 date last insured[2]—were typically and generally normal, with findings that the claimant was alert and oriented to person, place, and time, had normal mood and affect, normal behavior, normal judgment and thought content, was well-developed and well-nourished, had good eye contact, normal psychomotor activity, normal speech, well-organized and linear thought process, and intact insight and judgment (e.g., B1F/6; B13F/78, 80, 92, 94, 98, 100, 102-103, 105-107).

---

[2]   The "date last insured" is merely the last date on which, as a result of work history, Kapoi could qualify for the types of Social Security benefits he sought. *See generally* Dkt. No. 10-1, at PageID.39 (AR at 18). An ALJ generally does not consider impairments and symptoms that arise only after that date. No party here suggests that the date last insured has any effect on the outcome of this appeal; Kapoi described longstanding mental health symptoms that, according to him, predated September 2019.

4

> The alleged intensity, persistence, and limiting effects of the claimant's mental health symptoms were not consistent with the evidence.

*Id.* at PageID.46-48 (AR at 25-27). Having thus rejecting Kapoi's symptom testimony, the ALJ nonetheless adopted some limitations, including that his work should be limited to "simple, routine, and repetitive tasks," that there should be "occasional changes in work setting, and no production-rate pace work," and that there should be only "occasional interaction with the public and frequent interaction with coworkers." *Id.* at PageID.48 (AR at 27). These limitations, to put them in concrete terms, would require Kapoi to interact with random members of the public at work more frequently than Kapoi felt it was safe to interact with his own family.

Based on the conclusion that Kapoi could perform sedentary work with certain limitations, the ALJ concluded that Kapoi was not disabled within the meaning of the Social Security Act. *Id.* at PageID.51 (AR at 30). And so his applications were denied.

Kapoi's request for the Social Security Administration's Appeals Council to review the ALJ's decision was also denied, *id.* at PageID.22 (AR at 1), making the ALJ's decision the Commissioner's final decision. This timely appeal followed.

## **STANDARD OF REVIEW**

The Commissioner's disability determination must be affirmed unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). This standard is deferential, requiring "only

5

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).

But the court may only defer to those reasons the Commissioner—here, acting through an ALJ—actually offers. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). That means a district court cannot affirm the Commissioner based merely on "what it assume[s] the ALJ to have determined," for "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision." *Id.* at 1226; *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[The court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely.").

## DISCUSSION

When the Commissioner finds that a claimant is not malingering but instead has a severe impairment "which might reasonably produce the pain or other symptoms alleged," the Commissioner can "reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F.3d at 492-93 (cleaned up); *see also Orn*, 495 F.3d at 635.

In this appeal, Kapoi argues that the ALJ's written decision fell short. His argument advances on two fronts. First, he notes well-established Ninth Circuit precedent holding that "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Dkt. No. 12, at PageID.2828-29 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), in turn citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)). That is because it is not appropriate for an ALJ to "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Id.* at PageID.2829 (quoting *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024), in turn quoting *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)).

Second, turning to the particulars of this case, Kapoi contends that while the ALJ here found that medical evidence supported the existence of Kapoi's mental health conditions, the ALJ did not offer any valid—let alone specific, clear and convincing reasons—for rejecting his testimony about the severity of symptoms from those mental health conditions.

The court agrees on both fronts. The first is simply an accurate recounting of binding Ninth Circuit precedent. As to the second, although the ALJ's written decision remarked in passing that Kapoi's symptom testimony was "not consistent with the

7

medical evidence," Dkt. No. 10-1, at PageID.46 (AR at 25), and while "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008), the decision does not identify any way in which Kapoi's testimony actually might have been contradicted by the medical evidence.  The ALJ noted only that Kapoi's "mental status exams . . . were typically and generally normal." Dkt. No. 10-1, at PageID.48 (AR at 27).  But while these mental status exams do not offer any obvious *support* for Kapoi's testimony, the ALJ offered no explanation for why they would *contradict* Kapoi's testimony.  And while it is possible the ALJ *could* offer some explanation for why there is a contradiction, the court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray*, 554 F.3d at 1225.

    Notably, the Commissioner himself does not argue that the ALJ's written decision contains adequate reasoning to explain why medical evidence contradicts Kapoi's testimony about the severity of his symptoms.  The Commissioner's only argument in defense of the ALJ is that the "ALJ found evidence that [Kapoi] was not compliant with treatment recommendations."  Dkt. No. 14, at PageID.2843-44.  Noting that a "claimant's 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment' can undermine his allegations about the severity of an impairment,'" the Commissioner contends that the ALJ's decision can be

8

affirmed on the ground that Kapoi failed to explain his failure to abide by recommended treatment here. *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989, *superseded on other grounds*, 20 C.F.R. § 44.1502(a), *as recognized,* Smartt, 53 F.4th at 499).

But turn back a few pages to the block quote of the ALJ's reasoning rejecting Kapoi's testimony about the severity of his mental health symptoms. Nowhere in that block quote did the ALJ suggest rejection of Kapoi's symptom testimony because he failed to abide by recommended treatment for his mental health conditions. Kapoi's testimony at the hearing, indeed, reflected that he takes medication for his bipolar disorder, but that he faces serious symptoms even while on medication. On what, then, is the Commissioner relying for this argument? The answer reveals the weakness of the argument: That "[a]fter a surgery on his right ankle, [Kapoi] followed up with his treatment provider, who noted that he 'has been severely noncompliant' with post-operative instructions." Dkt. No. 14, at PageID.2844. After detailing two other ways in which Kapoi has not followed instructions concerning his ankle, the Commissioner concludes that "[t]his amounted to substantial evidence supporting the ALJ's finding that [Kapoi's] self-reports were not fully reliable." *Id.*

Were the question on appeal whether Kapoi's symptom testimony concerning his ankle were properly rejected, this medical evidence might have some force. But it is not. Kapoi focuses here on the ALJ's rejection of his mental health symptoms. As to

9

these mental health symptoms, the Commissioner offers no argument in response. Because the court likewise sees no persuasive argument in response, a remand for further administrative proceedings is necessary.

Kapoi makes other arguments in support of a remand.  *See* Dkt. No. 12, at PageID.2830-39.  But the court need not, and so does not, resolve them at this time.  *Accord Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and "declin[ing] to reach [an] alternative ground").

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Kapoi's applications for Social Security disability and disability insurance benefits is REVERSED and the case is REMANDED for further administrative proceedings consistent with this order.

IT IS SO ORDERED.

DATED:  February 25, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 25-00363 MWJS-RT, *Liona Nelson Kapoi v. Frank Bisignano*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS